# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| JUSTIN MACKIE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 2:20-cv-02562-DCN |
| ) | |
| COCONUT JOE'S IOP LLC,[1] CJ OFFERING ) | **ORDER** |
| LLC, and JOE PETRO and CAITLIN WEST, ) | |
| *individually*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

The following matter is before the court on defendants CJ Offering LLC ("Coconut Joe's"), Joe Petro ("Petro"), and Caitlin West's ("West") (collectively, "defendants") motion to strike the acceptance of offer of judgment, ECF No. 57, and plaintiff Justin Mackie's ("Mackie") motion to strike defendants' counterclaims, ECF No. 60. For the reasons set forth below, the court grants defendants' motion to strike and grants in part and denies in part Mackie's motion.

## I.  BACKGROUND

This case arises out of an employment dispute between a restaurant employee, Mackie; the restaurant that employed him, Coconut Joe's; Coconut Joe's former owner, Petro; and its general manager, West. In 2004, Mackie was hired as a server at Coconut Joe's, a restaurant on the Isle of Palms, South Carolina. Petro owned and operated the restaurant for over twenty-three years before he retired as general manager in January 2020 and sold the restaurant in June 2020. After his retirement, Petro's daughter, West,

---

[1] Defendant Coconut Joe's IOP LLC was voluntarily dismissed by stipulation on August 27, 2020. ECF No. 16.

took over as general manager. Petro served as general manager at the beginning of the period in which Mackie alleges Coconut Joe's violated minimum wage laws. West was the general manager when Mackie's employment ended.

Coconut Joe's paid Mackie and the other servers $4.00 an hour. Additionally, the servers were required to contribute 3% of their tips into a tip pool, up to a maximum of $50.00 per day. Coconut Joe's management team would then distribute the tip pool among bartenders, hosts, and expeditors/server assistants, with each type of employee receiving 1% from the 3% taken from the servers. An expeditor—also known as an "expo"—was responsible for putting garnishes and sauces on plates, making nachos and salads, and ensuring that the right plates were on the correct tray. ECF No. 44 at 5. The position was filled by a "team approach." ECF No. 36-1 at 4. All servers and bartenders were required to serve at least one shift per week as an expo or host. ECF No. 44 at 5. Despite this stated approach, at least one Coconut Joe's employee claimed to have worked exclusively as an expo during a summer season. While Coconut Joe's pays its servers and bartenders $4.00 an hour, those same employees are paid between $8.00 to $12.00 per hour when serving as an expo.

Like many other restaurants, Coconut Joe's temporarily closed on March 18, 2020 in response to the COVID-19 pandemic. As the restaurant began to reopen its dining services in May 2020, West held a staff meeting in which she told employees that Coconut Joe's would not take any adverse employment actions against employees who elected not to be placed on the work schedule. Mackie agreed to work at the restaurant when it opened for dine-in services on May 12, 2020.

Mackie alleges that on multiple occasions between May 11 and May 12, Mackie attempted to notify West about his concern that he had been exposed to COVID-19 and was experiencing its symptoms. According to Mackie, West told him to return to work each time. Mackie claims that on May 12, he was eventually told by another senior employee that he should "bring a doctor[']s note back," which Mackie "read as permission" to leave. ECF No. 36-7, Mackie Dep. at 281:21–24. After he returned home, Mackie left a message for his doctor describing his symptoms and his "perceived need to get tested." ECF No. 36-3, Mackie Dep. at 53:16–18. After an hour, his doctor called back and diagnosed Mackie with an anxiety attack. Upon receiving the diagnosis, Mackie did not return to work. After learning that Mackie had abandoned his shift, West sent Mackie a text message that read, "Since you left without permission, we will take that as you quitting your job here at Coconut Joe's." ECF No. 36-1 at 8 (citing ECF No. 1, Compl. ¶ 46). Mackie responded several times that he had not intended to quit his job. Ultimately, West did not permit Mackie to continue working at Coconut Joe's.

On July 9, 2020, Mackie filed a complaint against defendants in this court, alleging (1) retaliation under the Families First Coronavirus Response Act ("FFCRA") and (2) violation of the Fair Labor Standards Act ("FLSA"). On October 27, 2021, the court denied defendants' motion for summary judgment as to the two claims.[2]

On April 6, 2022, Mackie filed a Notice of Acceptance of Defendant's Offer of Judgment, which purported to allow Mackie to collect $9,200 "in full satisfaction of his claims." ECF No. 56. On April 8, 2022, defendants filed their motion to strike the

---

[2] The court granted summary judgment on an issue concerning the relevant statute of limitations for damages.

3

acceptance of the offer of judgment. ECF No. 57. Mackie filed a response on April 13, 2022, ECF No. 59, and defendants replied on April 14, 2022, ECF No. 61. On April 14, 2022, Mackie filed a motion to strike defendants' counterclaims. ECF No. 60. Defendants responded to Mackie's motion to strike on April 18, 2022. ECF No. 63. Mackie did not file a reply, and the time to do so has now expired. The court held a hearing on the motions on April 27, 2022. ECF No. 69. As such, both motions have been fully briefed and are now ripe for review.

## II.  DISCUSSION

The court first addresses defendants' motion to strike because if the court denies the motion, judgment should be entered and Mackie's motion to strike the counterclaims will no longer be justiciable. Finding that Mackie's filing of the acceptance of the offer of proof did not fully settle the case, the court then addresses the substance of Mackie's motion to strike.

### A. Defendants' Motion to Strike

Mackie filed a notice of acceptance of defendants' offer of judgment that represented that settlement had been reached on all of Mackie's claims. ECF No. 56. The filing attached the email from defendants' counsel to Mackie's counsel enclosing the offer of judgment, ECF No. 56-1, and the offer of judgment itself, ECF No. 56-2. Defendants move to strike Mackie's acceptance of the offer of judgment, arguing that their offer was only for settlement of Mackie's "unpaid wages claim[]" (the "FLSA claim") and was not intended to settle Mackie's claim for wrongful termination (the "FFCRA claim"). ECF No. 57 at 2. In response, Mackie maintains that his acceptance of the offer of judgment should be enforced and should effectively close the case. In the

alternative, Mackie asks that the court construe the filing as "acceptance [of the settlement offer] for his FLSA claim." ECF No. 59 at 1.

At the hearing, the court expressed its skepticism over the sensibility of defendants' decision to (1) offer to settle the FLSA claim, but (2) decline to settle both the FLSA and FFCRA claim for the same amount of money. As a legal matter, however, the court finds that the acceptance of the offer of judgment does not reflect a settlement of all of Mackie's claims. Whether the court interprets the text of the offer of judgment to determine if there was a meeting of the minds or whether it considers extrinsic evidence, the court finds that it would be improper to enforce the settlement agreement.

First, the text of the settlement offer does not support finding that the offer was intended to be in full satisfaction of all claims. "A settlement agreement is considered a contract, . . . and the Court will look to the objectively manifested intentions of the parties to determine whether such an agreement was reached." Ford v. Food Lion, 2013 WL 1320416, at *1 (W.D.N.C. Mar. 29, 2013). Under traditional contract principles, "the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." Lee v. BSB Greenwich Mortg. Ltd. P'ship, 267 F.3d 172, 179 (2d Cir. 2001). Furthermore, while courts apply principles of contract interpretation to offers of judgment, "the Fourth Circuit has warned that '[i]f there is any occasion in civil litigation [that] calls for caution and care by counsel, it is the drafting of a Rule 68 offer.'" Johnson ex rel. S.J. v. Hyatt Hotels Corp., 2017 WL 4473469, at *4 (D.S.C. Oct. 6, 2017) (quoting Bosley v. Mineral Cnty. Comm'n, 650 F.3d 408, 413 (4th Cir. 2011) (alterations

in original). Here, the text of the offer of judgment supports defendants' position that the offer was only intended to resolve the FLSA claim. The offer of judgment specifically states: "Defendant hereby offers to allow judgment to be taken against it for the amount of $9,200.00 <u>for unpaid wages</u> claimed by Plaintiff Justin Mackie." ECF No. 56-2 (emphasis added). In the complaint, the prayer for relief for unpaid wages is most plainly read as related to Mackie's FLSA claim. <u>See</u> Compl. at prayer for relief ¶ h (seeking "compensatory damages in an amount equal to the unpaid minimum wages owed to Plaintiff and similarly situated employees pursuant to 29 U.S.C. § 216(b)"). Alternatively, Mackie requested "emotional and compensatory damages resulting from his retaliatory termination." <u>Id.</u> at prayer for relief ¶ k.

Since defendants put forth an offer to settle the FLSA claim and Mackie purported to accept an offer in settlement of all claims, the court finds that there was no meeting of the minds. To enforce a settlement agreement, the court "must find that there was a meeting of the minds as to all material terms." <u>Ford</u>, 2013 WL 1320416, at *1. Determining whether there was a meeting of the minds "derives from standard contract principles." <u>Newson v. Prinston Pharm., Inc.</u>, 2021 WL 4258799, at *2 (W.D.N.C. Mar. 10, 2021) (internal quotation marks and citation omitted); <u>see</u> <u>Sadighi v. Daghighfekr</u>, 66 F. Supp. 2d 752, 759 (D.S.C. 1999) (determining that for there to be an enforceable settlement agreement, there must be "a meeting of the minds, a mutual assent to be bound to the essential and material terms of the contract"). "An acceptance has to match the precise terms of the offer . . . . If there are differences[,] then the response is a counteroffer and a rejection of the offer, which creates no contract because there is no meeting of the minds as to every material term." <u>Hayes v. SAFE Fed. Credit Union</u>,

6

2020 WL 5988067, at *4 (D.S.C. Feb. 4, 2020), report and recommendation adopted by 2020 WL 3989569 (D.S.C. July 15, 2020) (quoting Grubb & Ellis Co. v. Potomac Med. Bldg., LLC, 2009 WL 3175999, at *9 (E.D. Va. Sept. 30, 2009)).  Since Mackie's acceptance of $9,200 "in full satisfaction of his claims" did not match the precise terms of the offer, the court finds that there was no meeting of the minds, and there is no enforceable agreement.

Moreover, even if the court were to agree with Mackie that "[d]efendants' offer was ambiguous," the court would not enforce judgment based on Mackie's terms of acceptance in light of other extrinsic evidence.  Mackie argues that any ambiguity in a contract must be construed against the offeror, and to be sure, courts must typically look to the plain terms of the contract rather than to parol evidence.  However, Rule 68 offers to settle involve certain nuances, including a strong desirability for having ambiguous offers clarified.  See Radecki v. Amoco Oil Co., 858 F.2d 397, 402 (8th Cir. 1988) ("The desirability of having such offers clarified is particularly great in the Rule 68 context.").  Thus, "a defendant who recognizes the need to clarify the offer may do so unilaterally." 12 Wright & Miller, Federal Practice & Procedure § 3002 (2022); see Radecki, 858 F.2d at 403 (finding that the offeror may clarify an incomplete or ambiguous Rule 68 offer before acceptance, and after it has done so, the plaintiff may not accept the offer in reliance on the original terms).  Here, the evidence tends to show that defendants sought to clarify the terms of the offer of judgment as contemplated by Rule 68.  Defendants point to multiple email exchanges between counsel for both parties that took place before Mackie filed the acceptance of the offer of judgment.  In one email on April 5, 2022,

7

counsel for defendants wrote, "[w]e will need to try the retaliation case first." ECF No. 61-2.  In another email that same day, counsel for defendants wrote:

> My thought would be that we try the wrongful term case and then move for fees.  The addition of that baseless claim and your demand for settlement of it made it impossible to settle the FLSA case early on for a reasonable amount . . . . Let's talk tomorrow about who you will be calling and when I should have my witnesses available.

ECF No. 61-3.

These emails should have indicated to Mackie that defendants intended to pursue their retaliation claim to trial.  The fact that counsel for Mackie then turned around and represented to the court that the parties had agreed to settle all claims, despite defendants' clarification, is somewhat confounding.  Although the court need not rely on the extrinsic evidence, it finds that it further supports defendants' position that there was no valid acceptance.

Finally, Mackie argues, in the alternative, that if the court determines that the parties did not agree to an offer of judgment in settlement of all claims, Mackie's acceptance should still be allowed to stand as settlement of Mackie's FLSA claim.  The Fourth Circuit has ruled on this exact issue, finding that in such a scenario, no partial settlement may be upheld.  Ozyagcilar v. Davis, 701 F.2d 306, 308 (4th Cir. 1983).  The Fourth Circuit explained that while district courts retain "inherent jurisdiction and equitable power to enforce agreements entered into in settlement of litigation . . . . it is clear that the district court only retains the power to enforce complete settlement agreements; it does not have the power to impose, in the role of a final arbiter, a settlement agreement where there was never a meeting of the parties' minds." Id. (citing Wood v. Va. Hauling Co., 528 F.2d 423, 425 (4th Cir. 1975)).  As the court explained earlier, since defendants considered the offer of judgment to be an offer to settle the

FLSA claim, and Mackie considered it to be an offer to settle all claims, there was no meeting of the minds. "Where there has been no meeting of the minds sufficient to form a complete settlement agreement, any partial performance of the settlement agreement must be rescinded and the case restored to the docket for trial." Id. (citing Wood, 528 F.2d at 425).

Thus, although Mackie's acceptance of the offer of judgment—combined with Mackie's willingness to now treat it as settlement of his FLSA claim—might appear to result in a proper settlement, the agreement was never actually effectuated. The parties may certainly decide to proceed with the same terms for settlement of the FLSA claim, but they will need to explicitly agree to that—the court may not uphold the settlement agreement as is. Having decided that the acceptance of the offer of judgment does not settle the case, the court proceeds to address Mackie's motion to strike defendants' counterclaims.

### B. Mackie's Motion to Strike

Mackie moves to strike the counterclaims in defendants' answer, which seek sanctions against Mackie pursuant to the South Carolina Frivolous Civil Proceedings Sanctions Act and Federal Rule of Civil Procedure 12(f). In the alternative, Mackie moves for judgment on the pleadings on the same counterclaims pursuant to Rule 12(c). The court considers each ground for dismissing the counterclaims in turn.

#### 1. Rule 12(f)

Rule 12(f) provides:

The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

(1) on its own; or

9

> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Defendants first point out that Mackie's Rule 12(f) motion was not made within twenty-one days after service of the answer and counterclaims. Defendants argue that the motion may be dismissed on these grounds alone. However, Rule 12(f) also provides that the court may strike matter from a pleading on its own, and the law entrusts district courts with broad discretion in resolving motions to strike. See United States v. Ancient Coin Collectors Guild, 899 F.3d 295, 324 (4th Cir. 2018); see also 5C Wright & Miller, Federal Practice & Procedure § 1380 (2020) ("[T]he time limitations set out in Rule 12(f) should not be applied strictly when the motion to strike seems to have merit.").

Nevertheless, the Fourth Circuit has advised that motions to strike "are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" Waste Mgmt. Holdings v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A Wright & Miller, Federal Practice & Procedure § 1380 (1990)). Accordingly, a district court should deny a request to strike unless the challenged allegations "have no possible relation to the controversy and may cause prejudice to one of the parties." Graff v. Prime Retail, Inc., 172 F. Supp. 2d 721, 731 (D. Md. 2001), aff'd sub nom., Marsh Grp. v. Prime Retail, Inc., 46 F. App'x 140 (4th Cir. 2002). In other words, "[a] matter should not be stricken unless it has no possible bearing upon the litigation." Morton v. Town of Wagram, 2001 WL 68232, at *2 (M.D.N.C. Jan. 19, 2001) (internal quotation marks and citation omitted). The moving party bears a "sizeable burden" to show that striking a matter from party's pleading is justified. Adams v. 3D Sys., Inc., 2019 WL 8754875, at *11 (D.S.C.

Nov. 26, 2019), report and recommendation adopted by 2020 WL 1527056 (D.S.C. Mar. 31, 2020).

The court finds that Mackie has failed to meet Rule 12(f)'s heavy burden based solely on the grounds raised in his motion, but as the court later explains, dismissal of both counterclaims is nonetheless warranted under Rule 12(c). Defendants filed two counterclaims, asserting (1) violation of the Frivolous Civil Proceedings Sanctions Act ("FCPSA"), and (2) violation of Rule 11. See ECF No. 12. In short, defendants' counterclaims assert that Mackie's claims were frivolous and were presented for an improper purpose—namely, that they were intended to harass defendants, increase the cost of litigation, and extort money to which he was not entitled. Id. ¶¶ 73, 99. In his motion, Mackie argues that defendants' counterclaims are insufficient defenses and are no longer material because they contradict both the court's summary judgment order and defendants' offer of judgment. In terms of the offer of judgment, the court has already determined that the offer of judgment does not settle the case. Because Mackie's claims remain pending, defendants, at least in theory, are still entitled to bring their counterclaims asserting the filing of a frivolous pleading, and the offer of judgment does not render the counterclaims void.

The issue of whether the counterclaims are inconsistent with the terms of the summary judgment order is similarly a premature question under Rule 12(f). Under Rule 12(f)'s standard, this court has defined an impertinent allegation or claim as one "not responsive or relevant to the issues involved in the action and which could not be put in issue or be given in evidence between the parties." Sanders v. Reg'l Fin. Corp. of S.C., 2017 WL 3026069, at *2 (D.S.C. July 14, 2017). Mackie has failed to show that the

counterclaims have absolutely no bearing upon the litigation because the issues raised by defendants' counterclaims are, at the very least, reasonably related to Mackie's claims. Rule 12(f) is thus the improper vehicle for dismissing defendants' counterclaims, and the court proceeds to consider Mackie's motion as one for judgment on the pleadings.

### 2. Rule 12(c)

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Courts follow "a fairly restrictive standard" in ruling on Rule 12(c) motions, as "hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense." 5C Wright & Miller, Federal Practice and Procedure § 1368 (2011). Therefore, "a Rule 12(c) motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6)." Deutsche Bank Nat'l Trust Co. v. I.R.S., 361 F. App'x 527, 529 (4th Cir. 2010); see also Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014) ("[W]e are mindful that a Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact."). Although they share a standard, a motion for judgment on the pleadings differs from a motion to dismiss in that the former allows the court to consider matters outside of the complaint—or in this case, the answer—whereas the latter generally does not. When considering a Rule 12(c) motion for judgment on the pleadings, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011). But "the tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). On a motion for judgment on the pleadings, the court's task is limited to determining whether the claims asserted state a "plausible claim for relief." Id. at 679.

It is not clear to the court why Mackie fashioned his motion as one for judgment on the pleadings instead of a motion for summary judgment, given the procedural posture of this case. In any event, the court finds that Mackie's motion presents mainly legal issues. First, Mackie argues that since the court denied summary judgment in favor of Mackie, defendants "are not a prevailing party" and are thus not entitled to any award under the FCPSA. The FCPSA provides:

> At the conclusion of a trial and after a verdict for or a verdict against damages has been rendered or a case has been dismissed by a directed verdict, summary judgment, or judgment notwithstanding the verdict, upon motion of the prevailing party, the court shall proceed to determine if the claim or defense was frivolous.

S.C. Code Ann. § 15-36-10(C)(1) (emphases added). In response, defendants argue that the FCPSA is a post-trial motion, and since the court did not dismiss the case on summary judgment, it is still premature to decide whether the statute is implicated.

While defendants are correct that it would be premature to decide that the FCPSA will never be implicated, defendants' counterclaim should be dismissed for that very reason. "Motions made pursuant to the FCPSA are post-trial motions." Holmes v. E. Cooper Cmty. Hosp., Inc., 758 S.E.2d 483, 495 (S.C. 2014). As such, courts in this district have previously dismissed counterclaims asserting a violation of the FCPSA without prejudice because when they are asserted before the conclusion of the case, they are unripe. See State Farm Fire & Cas. Co. v. Lang, 2021 WL 3856187, at *6 (D.S.C. Aug. 27, 2021) (dismissing a FCPSA counterclaim without prejudice as unripe). Although the court hesitates to reach this result since Mackie did not present this

argument, other courts have reached the decision sua sponte.  See Carson v. Emergency MD, LLC, 2020 WL 6489528, at *3 (D.S.C. Nov. 3, 2020) (dismissing, on its own, a FCPSA counterclaim without prejudice as unripe).  Therefore, the court follows those prior decisions and dismisses defendants' first counterclaim without prejudice.  When the case has ultimately concluded, defendants will be allowed to raise their FCPSA claim then, assuming the statute is applicable at that time.

Second, Mackie argues that defendants' second counterclaim is subject to judgment on the pleadings because it is similarly inconsistent with the court's summary judgment order.  Defendants' second counterclaim asserts that Mackie's complaint violated Rule 11 because it was filed for an improper purpose.  Rule 11 authorizes the court to sanction a party to "deter future litigation abuse."  Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, 151 (4th Cir. 2002).  Specifically, under Rule 11, an attorney who presents a pleading, written motion, or other paper to the court certifies to the best of his or her "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Rule 11 further provides that violations of Rule 11(b) are to be raised in a "motion for sanctions . . . made separately from any other motion" or on the court's own initiative. Fed. R. Civ. P. 11(c)(2)–(3). As such, it is doubtful that defendants' claims should have even been raised in a counterclaim to begin with, rather than in a motion for sanctions. Even construing defendants' claim as one properly asserted in a counterclaim, the court finds that it may dismiss the counterclaim at this stage. A court's prior ruling "is the sort of extracomplaint evidence that a court may rely upon in ruling on a motion for judgment on the pleadings." Patyrak v. Apgar, 2012 WL 2118743, at *3 (D.N.J. June 11, 2012). The court denied defendants' motion for summary judgment, and therefore, the entirety of the court's summary judgment order may be considered as valid reasons that Mackie's complaint was not a form of litigation abuse when it was brought. To the extent defendants request further elaboration, the court finds that Mackie's claims were supported by at least some valid law and facts, as evidenced by the deposition transcripts and supporting law that Mackie was able to procure in his response to defendants' motion for summary judgment. And unlike the FCPSA, which specifically contemplates an award in a prevailing party's favor to be decided after the proceedings, the court can readily determine at this stage that the filing of the complaint was not impermissible under Rule 11. Therefore, the court dismisses the second counterclaim with prejudice.

### III.   CONCLUSION

For the reasons set forth above, the court **GRANTS** defendants' motion to strike and **GRANTS IN PART** and **DENIES IN PART** Mackie's motion to strike and motion for judgment on the pleadings.

AND IT IS SO ORDERED.

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

April 28, 2022
Charleston, South Carolina